IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| HILARY S. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. CBD-19-1018 |
| | ) |
| ANDREW SAUL,[1] | ) |
| | ) |
|     Commissioner, | ) |
|     Social Security Administration | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Hilary S. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). The ALJ also denied Plaintiff's claim for a period of Supplemental Security Income ("SSI") under Title XVI of the SSA. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 9 and Defendant's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 11. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **GRANTS** Plaintiff's Motion, **DENIES**

---

[1] When this proceeding began, Nancy Berryhill was the Acting Commissioner of the Social Security Administration. On June 17, 2019, Andrew Saul was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

Commissioner's Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

I. **Procedural Background**

On October 7, 2014, Plaintiff filed for DIB and SSI under Titles II and XVI of the SSA alleging disability beginning January 1, 2006. R. 13. Plaintiff's claims were initially denied on March 27, 2015 and upon reconsideration on November 30, 2015. R. 13. An administrative hearing was held on January 24, 2018. R. 13. On June 5, 2018, Plaintiff's claims for DIB and SSI were denied. R. 24–25. Plaintiff sought review by the Appeals Council, which concluded on March 6, 2019, that there was no basis for granting the request for review. R. 1. Plaintiff subsequently filed an appeal with this Court. ECF No. 1.

II. **Standard of Review**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Titles II and XVI if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)–(c), 416.945(b)–(c) (2012). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *See also* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012). The ALJ must present a

"narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2nd Cir. 2013)).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 15–24. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2006, the alleged onset date of Plaintiff's disability. R. 16. At step two, under 20 C.F.R. §§ 404.1520(c) and 416.920(c), the ALJ determined that Plaintiff had the following severe impairments: complex regional pain syndrome, obesity, anxiety, depression, attention deficit disorder ("ADD"), and personality disorder. R. 16. The ALJ found that Plaintiff's substance abuse disorder is a non-severe impairment. R. 16. At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."

R. 16. Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work. The ALJ limited Plaintiff to the following limitations:

> [Plaintiff] can sit for 6 hours and stand/walk for 2 hours in an 8 hour workday. [Plaintiff] can perform occasional bilateral reaching overhead, occasionally climb ramps and stairs, never climb ladders, ropes, scaffolds, occasionally balance, stoop, kneel, crouch, crawl, push and pull as much as she can lift and carry. She can never work around unprotected heights or moving mechanical parts. [Plaintiff] can never work in extreme cold or extreme heat. She is limited to performing simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work). She is limited to simple work related decisions and dealing with few changes in a routine work setting. [Plaintiff] is limited to occasional and superficial contact with coworkers, supervisors, and the public. She can perform no more than occasional twisting or rotation of the torso. After approximately 30 min of standing, [Plaintiff] must be able to sit for approx. 1-3 minutes, and after approximately 15 min of walking, she must be able to sit for approximately 1-3 minutes but would remain on task. She is limited to frequent bilateral handling, fingering, and feeling.

R. 18. At step four, the ALJ determined Plaintiff has no past relevant work. R. 23. At step five, with the benefit of a Vocational Expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: sorting worker, security worker, and table worker. R. 24. The ALJ found that "Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of this decision." R. 24.

On appeal, Plaintiff argues that the Court should reverse the final decision of the ALJ and remand the case to the Commissioner for further proceedings, alleging that the ALJ erred by failing to give appropriate weight to the opinions of Plaintiff's treating physician and the Social Security's consultative doctors. Pl.'s Mem. of Law in Supp. of Pl.'s Mot. 6, ECF No. 9–1.

The Court agrees in part with Plaintiff, and remands the case for the reasons stated below.

**The ALJ erred because (1) she considered Ms. Lambie a treating physician when she was (a) not a physician; or (b) a valid "medical source"; and (2) the limited weight accorded to Ms. Lambie's opinion was not supported by substantial evidence.**

Plaintiff contends Ms. Lambie's statement "clearly demonstrates the degree to which [Plaintiff's] psychological conditions prevent her from working." Pl.'s Mem. in Supp. of Pl.'s Mot. 6. Defendant contends that "Ms. Lambie is a nonacceptable medical source, whose opinion was not entitled to controlling weight." Def.'s Mem. in Supp. of Def.'s Mot. 12, ECF No. 11. Defendant further contends that the ALJ was justified in giving little weight to Ms. Lambie's opinion stating that Plaintiff had "extreme limitations in maintaining concentration and attention and working with others without being distracted by them" because, among other things, the record "consistently revealed a normal mental status with good concentration and attention span." *Id.* at 13.

The ALJ's analysis of Ms. Lambie's opinion states:

> Little weight is given to the medical source statement provided by treating physician, Lauren Lambie, on January 9, 2018. Based on her treatment of [Plaintiff], Ms. Lambie determined that [Plaintiff] has extreme limitations in maintaining concentration and attention, sustaining an ordinary routine, and working with others without being distracted by them. The evidence at the hearing level suggests that [Plaintiff] is less limited than previously determined. For example, examinations throughout the record consistently indicated normal mental status with good concentration and attention span. Additionally, during her consultative examination, [Plaintiff] was pleasant and cooperative, and able to relate to the examiner. She obtained a score of 30/30 on the mini-mental state examination. Moreover, there is no indication from the record that [Plaintiff] is seeing a psychiatrist, or has ever been hospitalized for her mental impairments. Accordingly, little weight is given to the medical source statement of Ms. Lambie.

R. 23 (internal citations omitted).

Generally, the opinions of treating physicians are given greater weight than the opinions of other examining physicians because they are "likely to be the medical professionals most able

7

to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 404.1527(c)(2) (2017). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record[,]" the ALJ must give it controlling weight. *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2) and 416.927(c)(2)); *See also Testamark v. Berryhill*, 736 F. App'x 395, 397–98 (4th Cir. 2018). "However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight." *Skinner v. Berryhill*, No. ADC-16-3957, 2017 WL 5624950, at *9 (D. Md. Nov. 11, 2017) (citing *Lewis*, 858 F.3d at 867). An ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability because that issue remains for the Commissioner alone. 20 C.F.R. § 414.1527(d)(1) (2017). "Generally, courts should not disturb an ALJ's decision as to the weight afforded to a medical opinion absent some indication that the ALJ 'dredged up specious inconsistencies.'" *Thompson v. Berryhill*, No. 3:16cv815, 2018 WL 715597, at *4 (D. Md. Jan. 18, 2018) (citing *Dunn v. Colvin*, 607 Fed. App'x. 264, 267 (4th Cir. 2015)). If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating source's opinion:

> (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist giving an opinion about his area of specialty; and (6) any other factors which tend to support or contradict the opinion.

*Skinner*, No. ADC-16-3957, 2017 WL 5624950, at *9 (citing 20 § C.F.R. 404.1527(c)(1)–(6)). "An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the

reasoning behind the weight accorded to the opinion." *Id.* (citing *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D. Md. July 27, 2011)). "The regulations require only that 'good reasons' be provided for the weight given to a treating physician's opinion." *Id.* (citing 20 C.F.R. § 404.527(c)(2)).

Contrary to Defendant's assertion that Ms. Lambie is not a treating source, Def.'s Mem. in Supp. of Def. Mot. 12, the ALJ unequivocally stated "[l]ittle weight is given to the medical source statement provided by *treating physician*, Lauren Lambie, on January 9, 2018." R. 23 (emphasis added). Essentially, Defendant avers that both the *ALJ* and Plaintiff erred in stating that Ms. Lambie is a treating source. Under 20 C.F.R. §§ 404.1502(a) and 416.902(a), a licensed psychologist is considered an acceptable medical source. 20 C.F.R. §§ 404.1502(a)(2)(i), 416.902(A)(2)(i) (2017). "'Licensed psychologist' means an individual who (1) has a doctoral degree in psychology; and (2) has at least 2 years of professional, supervised experience in psychology that is approved by the Board in accordance with regulations adopted by the Board." Md. Code Ann., Health Occ. §§ 18-101(e), 18-302(f) (2014). According to Ms. Lambie's signature, she has a master's degree, is a licensed clinical professional counselor and is a licensed clinical professional art therapist. R. 789. Although accomplished, nothing in Plaintiff's brief indicates Ms. Lambie has a doctoral degree in psychology. Hence, the Court agrees with Defendant and finds: (1) the ALJ erred in labeling Ms. Lambie a treating physician; and (2) Ms. Lambie's opinion did not warrant controlling weight. *See Thomas v. Astrue*, No. WGC-10-1528, 2011 WL 1557911, at *11, n.16 (D. Md. Apr. 21, 2011) ("[A]n ALJ is prohibited from assigning controlling weight to a non-treating source."). On remand, the ALJ shall clarify whether she gave Ms. Lambie's opinion limited weight because Ms. Lambie was a treating source or a non-treating source.

Also, on remand, if the ALJ determines Ms. Lambie is a non-treating source, the ALJ "shall apply the following factors in assigning weight to the opinion: (1) examining relationship; (2) treatment relationship, including length, nature, and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors." *See O'Connor v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-234, 2016 WL 335857, at *2, n.2 (D. Md. Jan. 27, 2016) (citing 20 C.F.R. § 404.1527). In the ALJ's current analysis, there is no indication whether the ALJ applied any of the factors outlined in 20 C.F.R. §§ 404.1527 and 416.927. The ALJ did not mention that Plaintiff saw Ms. Lambie at least once a month and spoke to Ms. Lambie on the phone "once or twice a week." R. 98. It is also unclear if the ALJ took into consideration the fact that Ms. Lambie specializes in counseling, therefore, should be given more weight. 20 C.F.R. § 1527(c)(5) (2017).

In addition to the ambiguity as to how the ALJ treated Ms. Lambie's opinion, the Court finds that the limited weight the ALJ accorded to Ms. Lambie's opinion was not supported by substantial evidence. The ALJ cites to the Pain Management Institute records which consistently indicated that Plaintiff had normal mental status with good concentration and attention span. R. 23. Plaintiff takes issues with the ALJ's citations because they were "records from the Pain Management Institute, where [Plaintiff] was being treated for her complex regional pain syndrome, rather than her psychological conditions." Pl.'s Mem. in Supp. of Pl.'s Mot. 6. While at the Pain Management Institute Plaintiff was placed under the care of Dr. Thomas Larkin. The Court finds that although Dr. Larkin was treating Plaintiff's regional pain syndrome, as a medical physician he is certainly qualified to assess Plaintiff's mental status, concentration, and attention span. However, the ALJ failed to explain why Dr. Larkin's opinion was given greater weight than Ms. Lambie's.

10

The ALJ also cited to Dr. Shakuntala Dhir's Psychiatric Evaluation to support her assertion that Plaintiff was pleasant, cooperative, able to relate to the examiner, and that Plaintiff scored a 30/30 on the mini-mental state examination. R. 23. The Court struggles to reconcile the conflicting evidence within Dr. Dhir's report. On one hand, Plaintiff was pleasant, cooperative, and able to relate to the examiner, however, on the same page of the records, Dr. Dhir diagnosed Plaintiff with PTSD and Depressive Mood Disorder. R. 628. Dr. Dhir in discussing Plaintiff's prognosis, also stated that Plaintiff was not receiving adequate treatment for her mental illness. R. 628–29. Dr. Dhir stated that Plaintiff "was depressed[,]cried a lot and has anxiety and panic attacks." R. 627. Further, the fact that Plaintiff was pleasant, cooperative, and able to relate to the examiner, does not indicate one way or another whether Plaintiff has "extreme limitations in maintaining concentration and attention, sustaining ordinary routine, and working with others without being distracted by them." R. 23.

Further, the ALJ determined there was no indication from the record that Plaintiff had even been hospitalized for her mental impairments. R. 23. However, the records indicate that Plaintiff was hospitalized twice in 2006; once for psychiatric issues, and another time for an eating disorder. R. 355–65. Defendant argues that these hospitalizations were not within the relevant periods,[2] therefore, the ALJ's observation that Plaintiff was not hospitalized was not incorrect. Def.'s Mem. in Supp. of Def.'s Mot. 14–15. The Court disagrees. The ALJ did not state that there was no indication from the record that Plaintiff was not hospitalized *during the relevant time*, for her mental impairments. R. 23. Instead, the ALJ unequivocally stated, that there was no indication from the record that Plaintiff was hospitalized. R. 23. Defendant's

---

[2] Defendant asserts that under DIB, Plaintiff has to show that she was disabled at most 12 months prior to her application date. Def.'s Mem. in Supp. of Def.'s Mot. 14–15. Further, Defendant contends that under SSI, "the relevant period began on November 1, 2014, the first month following the date on which [Plaintiff] filed her SSI application." *Id.*

11

argument, although colorable, cannot substitute or supplement the ALJ's analysis. The Court is tasked with reviewing solely what was done by the ALJ.

Given the contradicting medical evidence as stated above, the Court finds that the ALJ's RFC analysis is not supported by substantial evidence. The ALJ cherrypicked facts in the record which supported her conclusion that Plaintiff's mental limitations were not as severe as alleged. This "cherrypicking" was similar to *Lewis v. Berryhill*, where the ALJ cited to medical records containing "normal" findings without discussing the other notes on the page stating claimant was presented with "stabbing, burning, throbbing and tingling, constant pain that increases with elevating the hand above the shoulder . . . ." 858 F.3d 858, 869–70 (4th Cir. 2017) (remanding the case to the SSA partly because the ALJ failed to adequately explain the reasons for denying the claimant's benefits despite the presence of contradictory evidence, therefore, "precluding [the court's] ability to undertake the 'meaningful review' which [the court is] tasked on appeal.").

Although the ALJ is not required to refer to every piece of evidence in her decision, *Thomas*, 916 F.3d at 312, the Court here cannot conduct meaningful review of the record when the evidence the ALJ cites includes direct contradictions within the same record. The ALJ did not provide a discussion why she finds the evidence cited more credible than the contradictory evidence. *Mascio*, 780 F.3d at 636 ("[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court simply finds too many errors, inconsistencies and contradictions to conduct meaningful review of the ALJ's decision.

Plaintiff also raises issue with the weight the ALJ accorded to: (1) Dr. Vijay Kannan; (2) Dr. Dhir; and (3) Dr. Michael April.  Pl.'s Mem. in Supp. of Pl.'s Mot. 8–11.  However, in view of the Court's decision to remand the matter due to the weight accorded to Ms. Lambie's opinion and the ALJ's "cherrypicking" of the evidence, the Court declines to address Plaintiff's other issues.  *See Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (declining to address all of a claimant's issues raised once the court decided to remand on one issue); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *6 (D. Md. Sept. 24, 2019).  On remand, the ALJ should address the other issues raised by Plaintiff.  *Timothy H. v. Saul*, No. TMD 18-1675, 2019 WL 4277155, at *7 (D. Md. Sept. 10, 2019).  In remanding this case, the Court expresses no opinion as to whether the ALJ's ultimate decision that Plaintiff was not disabled is correct or incorrect.  *See Parker v. Comm'r, Soc. Sec.*, No. ELH-16-2607, 2017 WL 679211, at *4 (D. Md. Feb. 21, 2017).

## IV.   Conclusion

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's Motion, **DENIES** Commissioner's Motion, and **REMANDS** this matter for further proceedings.


April 2, 2020                                                                    /s/
                                                                   Charles B. Day
                                                                   United States Magistrate Judge

CBD/hjd

13